MICHAEL JOHN GARBER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Garber v. Commissioner
Docket No. 7976-76.
United States Tax Court
T.C. Memo 1978-220; 1978 Tax Ct. Memo LEXIS 294; 37 T.C.M. (CCH) 944; T.C.M. (RIA) 78220; June 12, 1978, Filed *294 Held, petitioner was not away from home when he incurred traveling expenses. Michael John Garber, pro se. Lawrence G. Becker, for the respondent. WILES
MEMORANDUM FINDINGS OF FACT AND OPINION WILES, Judge: Respondent determined a $ 655.23 deficiency in petitioner's 1973 Federal income taxes. The only issue we must decide is whether petitioner had a tax home during 1973 from which he could be away when he incurred traveling expenses in pursuit of his trade or business. FINDINGS OF FACT Some facts were stipulated and are found accordingly. Petitioner timely filed his 1973 Federal income tax return with the Internal Revenue Service Center, Ogden, *295 Utah. When he filed his petition herein, petitioner was a resident of San Francisco, California. During 1967 petitioner lived with his parents in Baltimore, Maryland. After high school, in June 1967, petitioner left home and entered Calhoun School in Baltimore. Calhoun is a trade school for marine engineering that is run by the Marine Engineers Benefit Association (hereinafter the MEBA), a marine engineering trade union. During the entire time while attending Calhoun petitioner received room and board, and $ 200 a month from the school. Petitioner attended Calhoun for three months and then entered the Merchant Marine Academy in New York. After a year at the Merchant Marine Academy, petitioner returned to Calhoun. Upon his return to Calhoun petitioner attended classes for three months and then, as part of his academic curriculum, petitioner spent a year at sea. After his year at sea, petitioner in 1969 returned to Calhoun where he studied for six months, and subsequently passed a two-week United States Coast Guard test. On March 26, 1970, petitioner was licensed as a "temporary third assistant engineer of steam and motor vessels of any horsepower." Upon receiving his temporary *296 license, petitioner shipped out at Maryland. Because of arguments on the ship, however, petitioner quit his job and flew to the West Coast. After arriving on the West Coast, petitioner visited Arizona and stayed in Nevada with his father who lived outside of Reno in a trailer home. During 1970 and the first part of 1971, petitioner traveled extensively, taking shipping jobs from New York, New Orleans, San Francisco, and Los Angeles. At one time he joined a ship in Japan where he was stationed for four months. In September of 1971, petitioner entered State University of New York Maritime College located in Bronx, New York, so he could take courses that would maintain and improve his skills as a marine engineer. After completing one academic year petitioner drove to Reno, Nevada, and then to San Francisco, where on August 4, 1972, he signed on with a new ship, the China Bear. Because of mechanical and automation problems on the China Bear petitioner was not discharged until November 11, 1972. As a result of his late return to the United States petitioner was unable to attend the 1972 fall semester at State University of New York Maritime College. Instead, he received permission *297 from the College to attend the University of California, Santa Cruz, where he studied from January 1973 until June 1973. While living in Sata Cruz, petitioner lived in an apartment for which he paid $ 180 per month. Petitioner also spent approximately $ 4 per day on food. During weekends from January 26, 1973 through February 10, 1973, petitioner drove from Santa Cruz to San Francisco in an attempt to obtain work as a night engineer on ships docked in San Francisco. Once or twice during this period he visited Reno, Nevada. He obtained one night job during the weekend of February 9-10. From February 10, 1973 to April 2, 1973, petitioner received vacation pay from his union, the MEBA. From April 2, 1973 to June 1973, after petitioner exhausted his vacation benefits, he resumed driving to San Francisco each weekend in search of work as a night engineer. In June, upon completing his courses at the University of California, Santa Cruz, petitioner drove to Reno, Nevada, where he visited his father and did a little gambling. On June 25, 1973, petitioner signed on the ship Wyoming. He was discharged from the Wyoming on August 18, 1973, in San Francisco. After docking in San Francisco, *298 petitioner drove to New York and in September 1973, resumed his studies at State University of New York Maritime College. While attending school, petitioner went to New York City in an attempt to obtain weekend work as a night engineer on ships in New York ports. From September 1973 until the end of 1973, petitioner lived in an apartment in the Bronx for which he paid $ 100 per month. During this period he spent approximately $ 4 a day for food. In 1974, petitioner worked on ships from May 15 through June 28, and again from June 29 through July 10, 1974. He also continued his schooling in New York. During 1973 petitioner had a Nevada drivers license, his car was registered in Nevada, he listed Reno, Nevada, as his home address on his tax return, and he kept a few personal possessions in his father's mobile home outside of Reno. At no time has petitioner maintained a personal residence in Nevada. On his 1973 Federal income tax return, petitioner deducted $ 3,592.37 as an employee business expense consisting of meals and lodging while in California and New York; expenses of commuting between school and his apartment; and expenses of traveling between New York to his place *299 of employment in California. Petitioner also deducted $ 641.68 in educational expenses. Respondent, in his notice of deficiency, disallowed all of petitioner's claimed employee business expenses, and petitioner's education expenses. At trial and on brief, respondent conceded that all of petitioner's educational expenses were deductible. Respondent has also conceded that petitioner's automobile expenses of driving from Santa Cruz, California, to San Francisco, California, in search of weekend employment, and petitioner's expenses of driving from Bronx, New York, to New York City, also in search of weekend employment were deductible employment seeking expenses. Finally, respondent has conceded that petitioner's cost of driving from California to the Bronx so that he could return to school was also a deductible expense. OPINION Section 162(a) (2) [1] allows a deduction for all ordinary and necessary business expenses including "traveling expenses * * * while away from home in the pursuit of a trade or business." The parties agree petitioner incurred traveling expenses -- consisting of meals and lodging in Santa Cruz, California, and Bronx, New York -- in pursuit of his trade or *300 business as a marine engineer. The only issue we must decide is whether petitioner was away from home when he incurred these expenses. Petitioner alleges his tax home during 1973 was Reno, Nevada. As support for his contention petitioner points to several contacts he had with Reno in 1973: his father lived near Reno; petitioner visited Reno at least twice during 1973; he had a Nevada driver's license, and registered his car in Nevada; he kept a few possessions in his father's trailer in Reno; and he listed Reno, Nevada, as his home address on his 1973 Federal income tax return. Petitioner's contentions may be summarized as follows: in his trade or business a great deal of travel is involved, yet as petitioner phrased it, "you've got to be from some place * * * you've got to have a home," and Reno, Nevada, was the city with which he had the most contacts in 1973. Consequently, petitioner claimed Reno, Nevada, as his tax home, and concluded that meals and lodging purchased elsewhere, in pursuit of his trade or business, were deductible. Respondent contends petitioner was an itinerant during 1973, *301 had no permanent tax home, and therefore was not entitled to deduct his meals and lodging in Santa Cruz, California, and Bronx, New York. For a taxpayer to deduct traveling expenses they must be reasonable and necessary, incurred while away from home, and incurred in pursuit of business. . Normally, a taxpayer's home is his principal place of business. If, however, he has no principal place of business, his tax home may be his residence. Cf. . A taxpayer without a primary place of business, and without a permanent residence may, however, be without a tax home from which he can be away. ; . In the case before us, petitioner had no principal place of business. He worked out of various ports in the United States, including New York, San Francisco, and New Orleans. Petitioner also had no permanent residence. He lived in Bronx, New York, and Santa Cruz, California. When not in either of these two cities, petitioner was *302 either working on a ship or traveling. Although petitioner contends Reno, Nevada, was his residence during 1973, the facts do not support this contention. Petitioner never maintained an abode in Reno, he incurred no living expenses in Reno, and he only visited the area a few times, presumably to see his father. Having no duplicate living expenses, petitioner is hard-pressed to justify why we should allow him to deduct his meals and lodging in Santa Cruz, California, and Bronx, New York. See, e.g., . Because petitioner had no principal place of business and had no permanent residence, we conclude petitioner had no tax home during 1973 from which he could be away. Accordingly, he is not entitled to deduct his meals and lodging in Santa Cruz, California, or in Bronx, New York. To reflect respondent's concessions, Decision will be entered under Rule 155. Footnotes
1. Statutory references are to the Internal Revenue Code of 1954, as amended.↩